## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**IRONWOOD TRADING, LLC, et al.,**

      **Petitioners,**

**v.**                                   **Case No.  8:07-mc-59-T-30MSS**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

## ORDER

THIS CAUSE came before the Court on February 21, 2008, for an evidentiary hearing concerning a Petition to Quash IRS Summons (Dkt. #1), the United States' Motion to Deny Petition to Quash and For Enforcement of the IRS Summonses (Dkt. #20), Petitioners' Response to Motion to Deny and Enforce (Dkt. #28), the United States' Reply to Petitioners' Response (Dkt. #32), and Petitioners' Surreply (Dkt. #35).  The Court, having considered the petition, motion, response, reply, surreply, exhibits, affidavits, argument of counsel, and being otherwise advised in the premises, concludes that the United States' Motion to Deny Petition to Quash and For Enforcement of the IRS Summonses should be granted.

**I.**      **Background**.

On July 20, 2007, Petitioners Ironwood Trading, LLC ("Ironwood"), Lonsway Trading, LLC ("Lonsway"), Barton 2005 Trust (the "Barton Trust"), and Lancer A. Barton ("Lancer Barton") (hereinafter collectively referred to as the "Petitioners") filed a Petition

to Quash four Summonses issued respectively by the Internal Revenue Service ("IRS") to the Petitioners (the "Summonses").[1]  In general, the Summonses request documents regarding legal or tax advice that each petitioner received from their attorney(s) or CPA(s) in relation to Distressed Asset and Debt ("DAD") tax shelter transactions.[2]  The IRS is examining the correctness of returns filed by Ironwood (taxable period January 1, 2004 through December 31, 2004), Lonsway (taxable period January 1, 2003 through December 31, 2004) and the Barton Trust (taxable period January 1, 2005 through December 31, 2005) which passed on losses to United States taxpayers as well as the correctness of returns filed by Lancer Barton. Lancer Barton, the summoned person, purchased and engaged in three DAD tax shelter transactions.

Petitioners argue that the IRS issued the Summonses with an improper purpose and with the intent to harass the Petitioners into settling with the IRS.  Petitioners also argue that the IRS failed to adhere to notice procedures when issuing the Summonses.   In the alternative, Petitioners argue that the documents requested pursuant to the Summonses are not relevant to the IRS's examination.   Finally, Petitioners claim that the Summonses represent an abuse of process by the government as a means of conducting pre-litigation discovery.

---

[1] Dkt. 1-2, Composite Exhibit "A".

[2] A distressed/asset debt transaction typically involves the use of a limited liability company, taxed as a partnership, to shift losses among partners entering and exiting the partnership.

II.     **Burdens of Proof**.

In order to succeed in enforcing a summons, the IRS "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the Code have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also United States v. LaSalle National Bank*, 437 U.S. 298 (1978). The United States may satisfy this burden through the sworn affidavit of the issuing agent. *United States v. Medlin*, 986 F.2d 463, 466 (11th Cir. 1993); *United States v. Leventhal*, 961 F.2d 936, 939 (11th Cir. 1992).

Once the United States has established its prima facie case, the burden shifts to petitioner to refute one of the four elements of the Government's prima facie showing or show that enforcement of the summons would constitute an abuse of the court's process. *See Powell*, 379 U.S. at 58; *La Mura v. United States*, 765 F.2d 974, 979-80 (11th Cir. 1985). The taxpayer's burden is a heavy one, which he must meet by disproving the actual existence of a valid civil tax determination or collection purpose by the IRS. *See LaSalle* at 316.

The IRS filed the Affidavit of Revenue Agent Larry Weinger and presented his testimony at the hearing establishing the four factors set forth in *Powell* and *Leventhal*. Accordingly, the Petitioners must now disprove one of the four factors or prove that the enforcement of the summons would be an abuse of process. *See Leventhal* at 939.

### A.      Legitimate Purpose.

An IRS summons must be issued "in good-faith pursuit of the congressionally authorized purposes of § 7602." *LaSalle*, 437 U.S. at 318.  The IRS may summon testimony or information that is "relevant or material" to inquiries related to the "correctness of any return" or "for the purpose of determining the liability of any person for any internal revenue tax."  26 U.S.C. § 7602(a).  The IRS does not need to demonstrate that the transactions are abusive tax shelters before it obtains information about the transactions, rather the IRS can issue a summons to investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.  *See Powell*, 379 U.S. at 57.  As long as there is a legitimate purpose for the investigation, such as determining tax liability, any documents useful in determining tax liability are relevant.  *See e.g., In re Newton*, 718 F.2d 1015, 1016 (11th Cir. 1983).

Petitioners argue that the Summonses were not issued pursuant to a legitimate purpose.  Petitioners claim that the Summonses were intended to harass and intimidate Petitioners into abandoning their lawful positions with respect to the audits and settling with the IRS, or in the alternative, the Summonses were inappropriately issued by the IRS in the attempt to use its summons power as a pre-litigation discovery tool.  Petitioners offer the affidavits of John Rogers and Sweta Shah in support of their argument that the IRS issued the Summonses for the purposes of harassment and intimidation.

First, Petitioners offer the affidavit of John Rogers in support of their argument that the Summonses were issued with an improper purpose.  In general, Mr. Rogers's affidavit

recites Mr. Roger's financial research relating to investment opportunities in Warwick

Trading, LLC and/or Sugarloaf Fund, LLC.  The affidavit does not specifically mention any

of the Petitioners in this matter or appear to offer information relevant to the Summonses at

issue.  Petitioners appear to base a large portion of their argument on Paragraph 31 of Mr.

Rogers' affidavit which states, in pertinent part:

> On May 4, 2007, Auditors admitted to me that they considered petitioners'
> efforts to comply with tax laws "sincere."  Weinger also told me that the
> auditors were being guided by district counsel who planned to litigate
> regardless of the results of the audit and notwithstanding whether petitioners
> were able to prove bad business debt through the audit.[3]

Mr. Rogers' statement that a few unnamed "Auditors" considered petitioners' efforts

to comply with tax laws as sincere, certainly does not disprove one of the four factors in

*Powell* or prove that the enforcement of the summons would be an abuse of process.

Additionally, Mr. Rogers' assertion that Agent Weinger told him that "the auditors were

being guided by district counsel who planned to litigate regardless of the results of the audit"

has been specifically refuted by Agent Weinger during an evidentiary hearing before this

Court as well as in Agent Weinger's affidavit.  Weinger's Affidavit states, "I [Weinger] did

not indicate that the investigation was merely a tool to obtain discovery before litigation."[4]

Further, as long as the IRS has not referred the investigation to the Tax Court for the

commencement of civil proceedings, a summons will not be viewed as undermining Tax

Court discovery rules.  *See PAA Management, Ltd. v. United States*, 962 F.2d 212, 219 (2d

---

[3] Dkt. #28-2.

[4] Dkt. #20-2 at 7.

Cir. 1992); *see also, e.g. Mason v. United States*, 966 F.Supp. 1146, 1148 (M.D. Fla. 1997) (where petitioner argued that the IRS issued summonses in bad faith and for the improper purpose of gathering evidence for the Department of Justice or another federal agency, court agreed that as long as the IRS had not referred the investigation to the Department of Justice for prosecution, summons may be issued and enforced).

Second, Petitioners offer the affidavit of Sweta Shah in support of their argument that the Summonses were issued with an improper purpose. Sweta Shah is an associate attorney with the law firm representing John Rogers. In essence, Petitioners' claim that the IRS "threatened" them by "threatening" Sweta Shah. Ms. Shah claims that on November 8, 2006, an IRS Agent named Ray Tabor told her that her "proposed response date for IDRs was unacceptable and he would be forced to take action pursuant to 'Circular 230'." Additionally, Ms. Shah claims that another IRS Agent named Elise Gardner sent her a letter on December 20, 2006, indicating that Ms. Shah's initial response to the IRS's information requests was incomplete and that "[t]he Territory Manager will further review the matter to the Director of Practice for disciplinary proceedings . . continued practice before the Service requires a timely response to requests made in the conduct of an examination."[5]

The Court has reviewed a copy of the December 20, 2006 letter sent by Agent Gardner to Ms. Shah and is unimpressed. The letter simply states that Ms. Shah's initial response on behalf of Lancer A. Barton to requested information was incomplete. Then in

---

[5] *See* Dkt. #28-3.

a separate paragraph the letter cites specific provisions of the IRS code which require a timely response to information requests.  The letter appears to be a "reminder" not a "threat".  Furthermore,  the Court finds nothing threatening or intimidating in Agent Tabors' alleged statement to Ms. Shah that her "proposed response date for IDRs was unacceptable and he would be forced to take action pursuant to Circular 230, section 10.23."  Circular 230, section 10.23 simply provides, "No attorney, certified public accountant, or enrolled agent shall unreasonably delay the prompt disposition of any matter before the Internal Revenue Service."[6]

Accordingly, the Court concludes that Petitioners have failed to offer evidence sufficient to satisfy their burden of disproving that the Summonses were issued in good faith and for a legitimate purpose.

### B.    Relevance.

The government's burden of showing relevance is "slight."  *La Mura*, 765 F.2d 974, 981.  Information is relevant if it "might throw a light upon the correctness of the taxpayer's return."  *Id*.  The government must establish that it has a "realistic expectation rather than an idle hope that something might be discovered."  *Id.*  Nevertheless, the IRS may issue summonses for documents that are even potentially relevant to an ongoing investigation.  *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984).  In *Arthur Young*, the

---

[6] *See* Dkt. #28-7.

Supreme Court announced the controlling standard of "potential relevance" in summons

enforcement cases:

> As the language of § 7602 clearly indicates, an IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court. Cf. Fed. Rule Evid. 401. The language "may be" reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized. As a tool of discovery, the § 7602 summons is critical to the investigative and enforcement functions of the IRS, *see United States v. Powell*, 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964); the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense.[7]

Petitioners argue that the Summonses request documents that are irrelevant and

overbroad in relation to the IRS's stated goals of examining the correctness of the

Petitioners' tax returns.

The Summonses at issue request testimony and documents concerning: (1) documents

related to the anticipated tax benefits of the DAD transactions at issue; (2) engagement

letters, invoices, and billing records for legal, management, or tax advice; (3) correspondence

and notes of discussions with the entity at issue in each summons; and (4) documents related

to legal or tax advice with respect to those transactions.

The IRS's Coordinated Issue Paper dated April 18, 2007 states, in pertinent part:

> Section 6664 provides an exception, applicable to all types of taxpayers, to the imposition of accuracy-related penalty if the taxpayer shows that there was reasonable cause for the underpayment and that the taxpayer acted in good

---

[7] *Arthur Young*, 465 U.S. 805, 814.

faith.  Section 6664(c).  The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all relevant facts and circumstances.  Treas. Reg. Section 1.6664-4(b)(1) and (f)(1).   All relevant facts, including the nature of the tax investment, the complexity of the tax issues, issues of independence of a tax advisor, the competence of a tax advisor, the sophistication of the taxpayer, and the quality of an opinion, must be developed to determine whether the taxpayer was reasonable and acted in good faith.

Generally, the most important factor in determining reasonable cause and good faith is the extent to which the taxpayer exercised ordinary business care and prudence in attempting to assess his or her proper tax liability.  See Treas. Reg. Section 1.6664-4(b)(1).

* * *

Reliance upon a tax opinion provided by a professional tax advisor may serve as a basis for the reasonable cause and good faith exception to the accuracy-related penalty.[8]

* * *

The documents requested pursuant to the Summonses are clearly relevant to the IRS's determination of whether an accuracy-related penalty should be imposed on Petitioners.  The documents requested are the precise documents that the IRS would need to examine in order to make a determination as to whether the Petitioners acted with reasonable cause and good faith in assessing their tax liabilities.

Accordingly, the Court concludes that Petitioners have failed to offer evidence sufficient to satisfy their burden of disproving that the issued Summonses request relevant information or documents.

---

[8] Dkt. #20-7, IRS's Coordinated Issue Paper - Distressed Asset/Debt Tax Shelters dated April 18, 2007, Pages 21-22.

**C.       Possession of data**.

An IRS summons will be enforced to the extent that the data requested is not already possessed by the government.  *See United States v. Medlin*, 986 F.2d 463 (11th Cir. 1993). If the IRS admits to possession of certain data requested in a summons, then the Court may modify and limit the summons accordingly.  *See Kinney v. United States*, 1995 WL 813170, *6 (M.D. Fla. Feb. 1, 1996), citing *United States v. Davis*, 636 F.2d 1028, 1037-38 (5th Cir. 1981).  Even if only a small portion of the requested documents are in the IRS' possession, the Court may still properly enforce the summons in its entirety.  *See Medlin* at 463.

Petitioners argue that thousands of documents have already been provided to the IRS in response to numerous document requests issued by the IRS to Petitioners and/or third parties.  Petitioners further argue that a portion of the documents already provided to the IRS in response to other prior summonses or document requests are responsive to the Summonses at issue.  Petitioners have not, however, provided a list or specifically described which documents responsive to the Summonses, if any, were provided to the IRS by the summoned entities or individual.  Additionally, during the evidentiary hearing regarding this matter, Petitioners were again unable to specifically point to a relevant and responsive document in the IRS's possession that was provided by Petitioners pursuant to the Summonses.

Accordingly, the Court concludes that Petitioners have failed to offer evidence sufficient to satisfy their burden of disproving that the IRS already possess documents or information responsive to the Summonses.

**D.      Satisfaction of Administrative Steps.**

The requirements in *Powell* should not be read to require a per se bar to enforcement of IRS code requirements.  *See United States v. Bank of Moulton*, 614 F.2d 1063 (5th Cir. 1980).  In rejecting the elevation of "form over substance," the court set forth the following test:

> The correct approach for determining whether to enforce a summons requires the court to evaluate the seriousness of the violation under all circumstances, including the government's good faith and the degree of harm imposed by the unlawful conduct.  *Bank of Moulton*, 614 F.2d at 1066; *see also United States v. Payne*, 648 F.2d 361 (5th Cir. 1981).

Where the petitioners fail to show that they suffered prejudice as a result of the claimed administrative deficiencies, there is no basis for quashing the summonses.  *See e.g., Katrych v. IRS*, 1996 WL 774558, *2 (S.D. Fla. Dec. 11, 1996).

Petitioners argue that the IRS failed to adhere to the following administrative procedures required by the Code: (1) IRS failed to provide proper notice to the Petitioners' designated representation prior to serving a summons on a third party; (2) IRS failed to provide reasonable notice that contacts with persons other than the Petitioners themselves may be made; (3) IRS failed to first seek documents "voluntarily" from Petitioners; (4) IRS refused to allow Petitioners to sample documents; (5) IRS issued its IDRs in a "shot-gun" manner; and the information requested through summonses remains available to the IRS through the standard audit procedure.

Petitioners fail to show, however, that they suffered prejudice as a result of the claimed administrative deficiencies.  Further, the claimed administrative deficiencies do not

affect the validity of the Summonses. *See* Treasury Regulation § 601.506(a); *see also Smith v. United States*, 478 F.2d 398 (5th Cir. 1973) (rejecting taxpayer's argument that notice was invalid because not sent to attorney).

### E.     Abuse of Process.

Petitioners argue that even if the IRS has established a prima facie case, the summons must nevertheless be quashed as an abuse of process by the government.   Once the government has established a prima facie case, the burden shifts to the petitioner to disprove the elements of the prima facie case or demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of the court's process. *United States v. Davis*, 636 F.2d 1028, 1034 (5th Cir. 1981).   The summons would constitute an abuse of process "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *LaSalle*, 437 U.S. 298, 316.

In *LaSalle*, the Supreme Court further articulated the standard of "good faith" to be met in an IRS enforcement proceeding.   Specifically, the IRS "must use the summons authority in good faith pursuit of the congressionally authorized purpose of § 7602." *Id*.   In addition, the Court in *LaSalle* noted that this "good faith" standard "requires that the Service not abandon in an institutional sense . . .the pursuit of civil tax determination or collection." *Id*.

In arguing that the summons constitutes an abuse of process, Petitioners again complain that the Summonses constitute harassment and an improper vehicle for the IRS to

obtain pre-litigation discovery.[9]  Second, Petitioners argue that the IRS possesses an ulterior motive - to collect information pursuant to its plan to target John Rogers as a tax shelter promoter or, in the alternative, to harass Petitioners into giving up their claimed deductions. Third, Petitioners argue that the IRS is using the Summonses to improperly extend the Statute of Limitations.  Finally, Petitioners argue that the Summonses violate their First Amendment rights to free speech and redress of grievances and Fifth Amendment right to due process.

### 1.   Ulterior motive.

Petitioners' claims that the IRS has an ulterior motive to target John Rogers revolve around unsubstantiated speculation on the part of Petitioners' counsel and John Rogers himself.  Notably, only two affidavits were offered by Petitioners in support of their Petition to Quash the Summonses - the first by John Rogers, and the second by John Rogers' legal counsel.  The content of the affidavits is unpersuasive and irrelevant to the information sought in the Summonses.  Petitioners have included many arguments in their briefs that are wholly unrelated to the Summonses at issue and the Court declines to analyze issues that are irrelevant to the proceedings at hand.  Petitioners have provided no proof that the information requested in the Summonses is irrelevant to the IRS' examination of their tax liabilities or that such Summonses were issued for a purpose inconsistent with a determination of the Petitioners' civil tax liabilities.

------

[9] The Court has already addressed Petitioners' claims of harassment and pre-litigation discovery and concluded that Petitioners failed to offer evidence sufficient to satisfy their burden of proof.

### 2.      Extension of Statute of Limitations.

Petitioners argue that the IRS issued the Summonses for the improper purpose of extending the statute of limitations on examining Petitioners' tax returns.  The IRS generally has three years to conduct an audit of taxpayer's returns.  *See* 26 U.S.C. §§ 6501 and 6229. Only Lonsway can reasonably make this argument, since its return was filed in 2004.  The remainder of the returns in question where filed in 2005 or 2006; and therefore, the three year period has not yet expired.  However, the IRS has already filed a FPAA for Lonsway; thus, this argument is moot.  Furthermore, Petitioners have not provided relevant legal precedent which would support the argument that it would be an abuse of process for the IRS to issue a summons in order to toll the audit period when an uncooperative taxpayer refuses to provide documents substantiating claimed deductions.

### 3.      Violation of Constitutional Rights.

Petitioners argue that the Summonses violate their First Amendment rights to free speech and redress of grievances and Fifth Amendment right to due process.  Petitioners' argument is without merit.  First, Petitioners fail to provide any legal precedent to support the argument that producing information in response to a summons violates their First Amendment right to freedom of speech.  Second, the Petitioners are currently exercising their due process rights by filing this action.  *See Anderson v. United States,* 236 Fed.Appx. 491 (11th Cir. 2007); *see also* 26 U.S.C. § 7609(b)(2), (h)(1).  Due process is served by requiring the government to make a prima facie case and is further protected by allowing the taxpayer an opportunity to rebut such a showing.  *See id.*

Accordingly, Petitioners have failed to meet their heavy burden of establishing bad faith by the IRS or an abuse of process by the government.

It is therefore ORDERED AND ADJUDGED that:

1.      The United States' Motion to Deny Petition to Quash and For Enforcement of the IRS Summonses (Dkt. #20) is **GRANTED**.

2.      Petitioners' Petition to Quash IRS Summons (Dkt. #1) is **DENIED**.

3.      The Clerk is directed to CLOSE this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on March 25, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2007\07-mc-59.mt deny pet to quash irs sum20.wpd